# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

2003 Cadillac Escalade,
VIN: 1GYEK63N73R123489,
registered to Connie Alexander

**AFFIDAVIT AND APPLICATION FOR SEIZURE WARRANT**

CASE NUMBER:

I, _Debra L. LaPrevotte_ being duly sworn depose and say:

I am a _Special Agent with the Federal Bureau of Investigation_ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely: (describe the property to be seized):

> 2003 Cadillac Escalade, VIN: 1GYEK63N73R123489, registered to Connie Alexander.

which is/are: (state one or more bases for seizure under the United States Code)

> property constituting, or derived from any proceeds obtained directly or indirectly, as the result of one or more violations of 18 U.S.C. § 1341 and/or property involved in money laundering, in violation of 18 U.S.C. §1956; subject to seizure pursuant to 18 U.S.C. §§ 981(b); 982(b), and 21 U.S.C. § 853(f) (incorporating 28 U.S.C. § 2461(c)), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a) and 982(a).

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

> SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN.

Continued on the attached sheet and made a part hereof.    ☒ YES    ☐ NO

Diane Lucas
Asset Forfeiture Unit, Criminal Division
(202) 514-7912

Signature of Affiant
Debra L. LaPrevotte, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT OF SPECIAL AGENT DEBRA L. LaPREVOTTE

DEBRA L. LaPREVOTTE, being duly sworn, deposes and states the following:

## ITEMS TO BE SEIZED

1. This affidavit is in support of a seizure warrant for the following items:

   a. 2002 Harley Davidson motorcycle, VIN:  1HD1GEV1X2K400278. registered to Connie Alexander;

   b. 2003 Ford Mustang, VIN:  1FAFP45X53F348693, registered to Connie Alexander Bashore; and

   c. 2003 Cadillac Escalade, VIN:  1GYEK63N73R123489, registered to Connie Alexander.

## AFFIANT'S EXPERIENCE

2. I am a Special Agent ("SA") employed by the Federal Bureau of Investigation (FBI).  I have been so employed for twelve (12) years.  Currently, I am assigned to the Asset Forfeiture/Money Laundering Squad in the FBI's Washington, D.C., Field Division (Northern Virginia Resident Agency).  My investigative assignments while in the Asset Forfeiture/Money Laundering Squad include investigating the asset forfeiture aspects of suspected violations of the federal anti-money laundering statutes (18 U.S.C. §§ 1956 and 1957), as well as mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and health care fraud (18 U.S.C. § 1347) violations.  I have received extensive training in advanced money laundering techniques and complex financial manipulation.

3. I am currently assisting SA Andrew Sekela, FBI, Washington Field Office and SA Matt Walsh, FBI Baltimore Field Office.  SA Sekela is assigned to investigate public corruption matters and SA Walsh is a assigned to investigate money laundering matters.

4. The information contained in this affidavit is based on my personal knowledge and

observations accumulated during the course of this investigation; on information conveyed to me by other law enforcement personnel; and on my review of documents, including interview reports. The affidavit is submitted for the limited purpose of establishing probable cause in support of this application for seizure warrant. Thus, it does not contain every fact known by me or the United States.

## PURPOSE OF APPLICATION AND LEGAL DISCUSSION

5. The Federal Bureau of Investigation and the District of Columbia are investigating allegations that Harriette Walters ("Walters") and others conspired to defraud the District of Columbia government ("DC") of over $20,000,000 by submitting false claims for property tax refunds, and by receiving over fifty unwarranted property tax refund checks. The DC government checks obtained as a result of the scheme were deposited into bank accounts associated with the conspirators. On at least one occasion, as part of the scheme, the U.S. mail was used to send a false document from the District of Columbia to one of the conspirators in Maryland.

6. This affidavit is submitted in support of a seizure warrant for the above listed item by a civil and criminal seizure warrant pursuant to 18 U.S.C. § 981(b), 18 U.S.C. § 982(a) and (b), and 28 U.S.C. § 2461(c) (incorporating 21 U.S.C. § 853(f)).

7. Based on the facts set forth in this affidavit, there is probable cause to believe that the subject properties are traceable to proceeds of a mail fraud scheme and/or constitutes property involved in money laundering and/or a conspiracy to commit those offenses, and is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of property constituting or derived from proceeds traceable to mail fraud (in violation of 18 U.S.C.

§ 1341), and pursuant to 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any real or personal property that is involved in a money laundering offense in violation of 18 U.S.C. §§ 1956, 1957, and/or 1960.

## PROBABLE CAUSE

8. The investigation revealed that from at least January 2001 through September 2007, there is reason to believe that Walters conspired with others to defraud the government of the District of Columbia of more than $20,000,000 through negotiation of fraudulently obtained property tax refund checks. Walters was employed at the Office of Tax and Revenue ("OTR"), which is part of the District of Columbia Office of the Chief Financial Officer ("OCFO"). Walters' title was Manager, Real Property Tax Administration Adjustment Unit at OTR.

9. Walters caused false or fraudulent property tax refund requests to be created. She then approved those refund requests, based on her position in the DC government. Once a fraudulently generated check was issued, Walters, or someone acting on her behalf, picked up the check from a DC government office. Walters, or one of her co-conspirators, then deposited the check in a bank account under the control of one of the co-conspirators. Most of the conspirators maintained bank accounts at Bank of America, and later at SunTrust Bank.

10. To facilitate the scheme and to make the fraudulently obtained property tax refund checks appear legitimate, Walters often made the checks payable to a company (listed as the payee or co-payee on the check) that either she or her co-conspirators controlled. While Walters and her co-conspirators used some pre-existing companies, at least one of the companies was created expressly for the purpose of depositing fraudulently obtained checks. It had no legitimate function.

11. A review of approximately 30 of the fraudulently obtained DC refund checks was conducted, and the majority of those checks were deposited into accounts under the control of Jayrece Turnbull at Bank of America and SunTrust Bank. In excess of $14,000,000 in proceeds from the scheme flowed through accounts controlled by Jayrece Turnbull before being disbursed to other accounts and conspirators.

12. A review of bank records for Harriette Walters, Richard Walters, Jayrece Turnbull and others associated with this scheme is being conducted. It has revealed, in part, that over the past seven years more than $8.5 million dollars was deposited into Bank of America accounts under the control of Harriette Walters, and $2.47 million dollars was deposited into accounts under the control of her brother, Richard Walters. Your affiant has reviewed receipts from several high end retail stores and found that Harriette Walters spent more than $1.4 million dollars at Neiman Marcus, and approximately half a million dollars at Saks Fifth Avenue, and made additional purchases at the Louis Vuitton Store, Nordstrom's and Macy's.

13. Based on information obtained from OTR, and from interviews and documents located during search warrants, your affiant is aware that Harriette Walters earned approximately $87,000 per year working for the DC government. This source of legitimate income is not sufficient to support the items purchased by Harriette Walters over the past several years.

14. Your affiant has reviewed bank records for Harriette Walters, Jayrece Turnbull and others associated with this scheme, to trace funds from the fraudulently obtained DC Government Tax Revenue checks to their ultimate recipient(s). For example, on May, 4, 2007, Jayrece Turnbull deposited a fraudulently obtained DC Government check in the amount of $398,680 into Bank of America account #XXXXX2467, held in the name of Jayrece Turnbull,

d/b/a Chapa Interiors. On the same day, Jayrece Turnbull wrote check #5032 made payable to Harriette Walters in the amount of $50,000. Walters cashed this check and purchased three cashier's checks: a $15,000 cashier's check made payable to Diane Gustus (a co-worker of Walters); a $10,000 cashier's check made payable to Nicole Mathews (a co-worker of Walters); and a $9,000 cashier's check made payable to Walters. A review of the bank records reveal that Harriette Walters and Jayrece Turnbull used this method to disburse proceeds from the fraud scheme to others.

    15. Based on the investigation to date, Walters bestowed lavish gifts, including money and personal property, to friends, family members, and co-workers.

    16. The investigation revealed that one of the co-conspirators in the scheme is Connie Alexander ("Alexander"). Alexander is employed by the AFL-CIO in Washington, DC as a technical support specialist. Her salary is approximately $73,000 per year.

    17. On January 14, 2008, Alexander was interviewed by law enforcement. She stated that she first met Harriette Walters in 1993 and that she and Walters have been best friends.

    18. According to Alexander, since the beginning of their friendship, Walters gave Alexander gifts such as designer handbags, or if Alexander owed money, Walters would give her money. Alexander said she did not know the total value of all the money and property that Walters gave her over the years. She estimated that she received from Walters approximately $300,000 to $500,000, including money, furs, and other items. Alexander stated that all the money she received from Walters that was deposited into her bank account was a gift or repayment from Walters for using Alexander's Nieman Marcus credit card. Alexander told investigators that, "Walters gave her more things than she could use in a lifetime."

19. A review of Alexander's bank records reveal that over the past few years Alexander used the money she received from Walters to pay bills, shop and gamble. In just the past few years, Alexander purchased in excess of $163,000 in jewelry from Adore Jewelers, spent at least $30,000 at Saks Fifth Avenue, purchased multiple vehicles and invested at least $17,000 with T Rowe Price Investments.

20. Your affiant reviewed Alexander's SunTrust Bank account #XXXXXXX9438 and discovered that cashier's checks worth $666,143.00 from Harriette Walters were deposited into the account.

21. During her interview, Alexander was shown several fraudulently obtained DC government checks. When shown check #6770965, Alexander said she signed the check. Alexander stated that she saw Wilkes Artis in the payee line on the check and knows that Wilkes Artis is a lawyer. Alexander said Walters gave her that check to deposit in her SunTrust business bank account, held in the name of Aurora RE.

22. According to Alexander, Aurora RE was a business that Alexander started with her friend Renata Lawson. Walters suggested the business name. She stated that she wanted to have a business that designed jeans or did computer consulting. Alexander stated that she opened a bank account in the name of Aurora RE in May or June 2007 at a SunTrust Bank branch in Washington, DC. There is no evidence that the business actually produced any products or provided any services. Alexander also has a personal account at SunTrust Bank in Fort Washington.

23. Alexander stated that the first time she endorsed the back of a DC government check was around 2000. Alexander said that she suspected something was wrong but didn't want to

know.

24. Your affiant reviewed the fraudulently obtained DC government OTR checks and found DC government check #6770965, dated June 15, 2007, made payable to "AURORA RE ENTERPRISES, LLC C/O WILKES ARTIS, ESQ," in the amount of $459,990. This check was deposited into Aurora RE's SunTrust account. DC government check #6805521, dated August 9, 2007, made payable to "AURORA R.E. ENTERPRISES, INC. C/O JEFF NADEL ESQ," in the amount of $345,000 was deposited into Aurora RE's SunTrust account. Alexander stated that she gave the majority of the money from the checks back to Walters, and kept a portion for herself.

## 2002 HARLEY DAVIDSON MOTORCYCLE

25. On or about January 12, 2005, Alexander purchased a 2002 Harley Davidson motorcycle, VIN: 1HD1GEV1X2K400278. To pay for the motorcycle, Alexander obtained a 36 month loan from the AFL-CIO Credit Union in the amount of $12,795.00. Alexander made the weekly payments of $94.13 from February 4, 2005 through October 20, 2006, reducing the balance to $5,887.73. On October 20, 2006, Alexander repaid the loan in full with money she obtained from Walter's scheme to defraud the DC government.

26. The weekly payments were automatically deducted from Alexander's AFL-CIO Credit Union account #XXXXXX5646, but the $5,887.73 used to pay off the balance of the loan can be directly traced to proceeds derived from the scheme to defraud the DC government.

27. A review of Alexander's SunTrust Bank account #XXXXXXXX9438 reveals that on October 23, 2006, Alexander wrote check #2589 in the amount of $5,887.73 made payable to the AFL-CIO Credit Union to pay off the balance of the motocycle loan. A review of Alexander's

personal SunTrust account revealed that on September 29, 2006, Alexander deposited a check for $125,000 from an account at Bank of America in the name of Chappa Interiors, which was controlled by Jayrece Turnbull.  A review of bank records revealed that the Chappa Interiors' Bank of America account was one of the many accounts used by Turnbull to deposit millions of dollars in fraudulently obtained DC government OTR checks.  As stated above, this account was used to deposit in excess of $5.7 million dollars worth of fraudulently obtained OTR checks. The OTR checks deposited into the Chappa Home Services' account are the source of funds that funded the $125,000 check to Alexander.  Thus, the money used by Alexander to make the payoff payment on the Harley Davidson motorcycle is directly traceable to the proceeds of the fraud scheme.

## 2003 FORD MUSTANG

28. Your affiant reviewed Alexander's personal SunTrust account #XXXXX9438.  On April 15, 2003, Alexander deposited into that account a Bank of America cashier's check #0020337 in the amount of $95,695.50, which was purchased by Jayrece Turnbull.  This cashier's check is consistent with the methods used by Jayrece Turnbull and Harriette Walters to disburse the proceeds of the fraud scheme.  On or about April 6, 2003, Alexander wrote check #1815 in the amount of $25,900 made payable to Koons Ford for the purchase of a 2003 Ford Mustang VIN: 1FAFP45X53F348693.  At the time Alexander wrote this check her SunTrust account still maintained a balance of approximately $75,000 from the $95,695.50 she deposited weeks earlier.  The Ford Mustang was purchased new at Koons Ford in College Park and was paid for in full.  The 2003 Ford Mustang is directly traceable to the funds stolen from the government of the District of Columbia.

## 2003 CADILLAC ESCALADE

29. On or about February 11, 2005, Alexander purchased a 2003 Cadillac Escalade VIN: 1GYEK63N73R123489 from her brother Percy Alexander. A review of Alexander's personal SunTrust Bank account #XXXXXX9428, indicates that Alexander initially paid her brother directly for the vehicle, and paid off Percy Alexander's loan from GMAC. Alexander obtained a new loan from the AFL-CIO Credit Union for $40,047.15. The AFL-CIO Credit Union disbursed the loan with two checks: one made payable to Alexander and GMAC for $37,752.15; and a second payable to Alexander for $2,000. The loan history reveals that Alexander made the weekly payments of $178.32 from February 25, 2005 through April 5, 2007, paying the balance down to $24,372.22. These monthly payments were automatically debited from Alexander's AFL-CIO Credit Union account, but on April 10, 2007, Alexander paid off the $24,391l.92 balance of the loan. This one time payment is consistent with the amount of gift money Alexander was receiving from Harriette Walters, Jayrece Turnbull and other co-conspirators.

## **CONCLUSION**

30. Based on the information contained in this affidavit, there is probable cause to believe that the Harley Davidson motorcycle, the 2003 Cadillac Escalade and the 2003 Ford

Mustang are traceable to proceeds of the scheme to defraud the DC government and/or are property involved in money laundering, and are therefore subject to seizure and forfeiture.

                                                          _____
                                                          Debra LaPrevotte, Special Agent, FBI

Sworn to and subscribed before me on this_____day of April, 2008.

_____
United States Magistrate Judge